## UNITED STATES *v.* EBBS.

*(District Court, W. D. North Carolina.* November Term, 1881.)

1. MARSHAL'S FEES — SERVICE OF A COMMISSIONER'S WARRANT IN A CRIMINAL CASE.

    A marshal is not entitled to a fee for the service of a commissioner's warrant in a criminal case, where the deputy marshal, after arresting the accused, allows him to go free upon his promising to attend the commissioner's court on a certain designated day.

2. SAME—SAME.

    Where a commissioner accepted an appearance bond in the absence of the accused, and before he had had a preliminary examination, and the marshal was advised of the fact, *held,* that a warrant in his hands is superseded; and that a subsequent arrest under the warrant is unauthorized, and does not entitle the marshal to charge a fee for the service of the warrant.

3. SAME—FOR ATTENDANCE AT THE HEARING AND GUARDING THE PRISONER.

    Where the commissioner hears the case of a prisoner, and decides that he must give bail for his appearance in court to answer an indictment, and commits him to the custody of the marshal or his deputy, if either happen to be present, until the required bail is given, *held,* that the marshal is entitled to a fee for attendance at the court, and for the service of a guard, if such service is rendered and was necessary; and the marshal, not the commissioner, is the judge of such necessity.

In this case a rule for retaxation of costs was granted upon a motion founded upon an affidavit of the defendant, who had pleaded guilty. A copy of the rule was duly served upon the marshal, and he filed an answer in support of the costs as taxed, and the matter was heard in open court.

*V. S. Lusk,* in support of rule.

*C. M. McLoud,* for marshal.

DICK, D. J. The exceptions presented in the affidavit to the costs taxed before the commissioner are as follows:

(1) The marshal charges for service of the warrant, when there was no valid service.

(2) The marshal charges expenses for 14 days in endeavoring to arrest the defendant, when the defendant might have been easily arrested, as he made no effort to evade the process of the law.

(3) The marshal charges for attending the court of the commissioner and guarding the defendant, when there was no necessity for such service, as the defendant was upon bail.

As to the first exception it appears in evidence that the deputy marshal, while he had the warrant in his hands, met the defendant and read the warrant to him, and told him that he was under arrest.

The defendant at once submitted to the authority of the deputy marshal, who told him that he might depart from custody if he would promise to attend the commissioner's court on a certain designated day. The defendant agreed to the proposition and went off, and did not afterwards appear at the time and place designated.

I am of opinion that this was not such a service of the warrant as entitled the marshal to the fee charged. The service of a commissioner's warrant in a criminal case consists of more than a mere arrest, as the marshal must keep the defendant in custody until he is carried before an examining magistrate for a preliminary hearing upon the charges in the warrant. Where an arrest is made on a commissioner's warrant, the officer making the arrest has no authority in law to take bail, and if he voluntarily allows the defendant to depart from custody before the case has been heard by the magistrate, it is a voluntary escape. The liability of the officer is absolute, and cannot be relieved by a subsequent arrest of the defendant; but the warrant is not invalidated, and the defendant may be retaken under the same warrant, and by the same officer. The misconduct of the officer does not prevent an arrest, as the public good requires that the defendant should be brought to justice. 1 Chit. Crim. Law, 61.

The rule of law is somewhat different in mesne process in civil cases, as the officer becomes special bail if he allows a defendant to depart out of custody without giving a bail-bond. Upon final process of execution if there is a voluntary escape the liability of the officer is absolute. If there is a negligent escape the officer may retake the prisoner on fresh pursuit and hold him, so as to relieve his liability. *Adams* v. *Turrentine*, 8 Ired. 147.

The action of the deputy marshal in this case, and the submission of the defendant to the control of the officer, constituted a valid arrest. Whether acts constitute an arrest depends upon the intent of the parties at the time. An arrest may be made without touching the person of the defendant at the time, if he voluntarily submits to the process of the law in the hands of the officer. *Jones* v. *Jones*, 13 Ired. 448.

Although there was a valid arrest in this case there was not a due service of process, and the marshal is not entitled to the fee charged. In his answer the marshal insists that the defendant was retaken on the warrant on a subsequent day and carried before the commissioner for a preliminary hearing. The evidence shows that the defendant, previous to the second arrest, and while he was still lurking in the woods and evading the officer, had an appearance-bond, with

sureties, prepared by his brother, I. N. Ebbs, with a condition to appear before the commissioner for an examination on the twentieth day of August. This bond was presented by I. N. Ebbs to the commissioner and was by him accepted in the absence of the defendant, and the deputy marshal knew that said bond had been accepted. The defendant made his appearance at the time and place designated in the bond. Before the hearing of the case commenced the commissioner, then regarding the said bond as erroneous and void, gave a verbal direction to the deputy marshal to arrest the defendant and hold him in custody until the case could be heard. The deputy marshal made an arrest on the warrant which he had long had in his hands.

I am of the opinion that when the appearance-bond was accepted by the commissioner, and the deputy marshal was advised of that fact, the warrant in his hands was virtually superseded and did not authorize an arrest. If the bond accepted by the commissioner was irregular, or in any way insufficient, he ought to have proceeded to have the defendant arrested in the manner provided in section 1019, Rev. St. This verbal direction to arrest was without legal force and authority. An examining and committing magistrate has no power verbally to command an arrest, except for a felony or breach of the peace committed in his presence, or for contempt in open court, or so near as to disturb his official proceedings. After hearing a case he may, by verbal order, direct an officer to take a defendant into custody until a proper *mittimus* can be prepared, but in no case can he commit a defendant to prison without a written warrant setting forth the cause of such commitment in specific terms.

The correctness of the form of the bond, as an appearance-bond, and the solvency of the sureties, are not denied, but the counsel of the marshal insisted that the bond was erroneous and void, as the commissioner had no power to take such a bond in the nature of a recognizance in the absence of the principal, and before a hearing of the matter.

It is well-settled law in this state that a bond duly signed, with sureties, and with a condition for the appearance of the principal in a criminal case before a court, accepted by a person authorized to take bail, is good as a recognizance. *Edney's Case*, 2 Winst. 463; *Houston's Case*, 76 N. C. 256.

In the case of a formal recognizance, the obligation is generally acknowledged by the parties in open court and entered of record, and they need not sign their names; but in the case of a bond in the

nature of a recognizance, where the parties sign their names, I can see no absolute necessity for the principal being present before the person authorized to accept such bond. During the absence of the principal the magistrate might refuse to accept such bond, but if he is satisfied that the bond was duly signed and sealed, and the sureties are sufficient and he accepts the bond, I am of the opinion that it is valid. At the common law, even in the case of a formal recognizance, where the defendant is an infant or in prison, and so absent, sureties were allowed to enter into recognizance of bail, and a warrant called a *liberate*, was issued by the person taking bail for the enlargement of the defendant. 2 Hale, P. C. 126.

If the bond in this case was as good as a recognizance, I am of opinion that it operated as a *supersedeas* of the warrant in the hands of the deputy marshal without any formal *supersedeas* writ. At the common-law an apprehension under a warrant could, in many cases, be prevented by a party going before a justice of the peace and finding sufficient sureties for his appearance to answer any indictment, and obtaining the *supersedeas* of the magistrate. This could be done even after an indictment found in a court. 1 Chit. Crim. Law. 46.

If process of arrest from a court after indictment could thus be superseded by a justice of the peace, I see no reason why a commissioner, having the powers of a justice of the peace in such matters, cannot supersede a warrant which he has issued to bring a person before him for an examination upon a charge of crime, by accepting a bond with sufficient sureties to secure an appearance in a bailable case, and where the defendant is entitled to have his witnesses heard upon the investigation.

I do not approve of this practice of accepting bail to prevent an apprehension upon legal process, and I will instruct the commissioners of this district not to adopt it, as I think it most proper and regular for defendants to enter into bond or recognizance in person before the magistrate, and that other proceedings should be in accordance with the usual course and practice of the courts. No justice of the peace can supersede the warrant of another without a formal and legal examination, (1 Chit. 36,) but we may reasonably suppose that a justice with whom a complaint was filed and who had issued the warrant, may supersede such warrant when the appearance of the defendant had been secured by him in taking a sufficient bond.

Commissioners are invested with many of the powers and functions of justices of the peace, and they act within the scope of such powers upon their own judgment and responsibility. A district attorney has

no authority to direct a marshal not to execute a warrant issued by a commissioner. *U. S.* v. *Scroggins*, 3 Woods, 529. He may appear before the commissioner and attend to the presentation of the evidence, but he is only counsel for the government. He cannot direct the commissioner in his judgment, or as to what course he shall pursue, or dismiss the proceedings. *U. S.* v. *Schumann*, 2 Abb. (U. S.) 523.

I am inclined to doubt the power of a federal judge, by writ of prohibition or otherwise, to control the discretion of a commissioner in the hearing of a cause before his order of commitment. The decision of a commissioner may in some things be reviewed upon writs of *habeas corpus* and *certiorari*, and rules of court may be adopted regulating the practice and modes of procedure in such inferior courts. As an examining and committing magistrate a commissioner has similar powers to those of a justice of the peace, in the state where he acts, and his proceedings must be agreeable "to the usual mode of process against offenders in such states." In this state a justice of the peace is authorized and directed to hear the witnesses of the defendant, and allow him reasonable time to employ counsel in his defence, and determine the matter after hearing evidence and argument on both sides of the case. The justice being vested with such powers and duties of investigation, he must necessarily have the incidental powers of continuing the matter to a future day, to enable parties to have a fair and full investigation, and also allowing a defendant bail in bailable cases, during such continuance of the cause. This course of procedure was adopted by the justice of the peace in *Queen's Case*, 66 N. C. 615; and the supreme court seemed to regard such course as regular and proper.

As the commissioner in this case adopted a similar course in accepting the appearance-bond of the defendant, he could not by a mere verbal order revive a superseded warrant, and legally direct an arrest of a person on bail, which had been accepted, before an examination of the merits of the case. I think that the deputy marshal made the charge with an honest belief that he was entitled to such fee for service of the warrant, and the commissioner is not blamable for approving the same, as required by the rules of court.

The second exception presented by the defendant is not fully sustained by the evidence. It appears that the warrant was issued on the sixteenth day of May, and that the defendant knew it was in the hands of the deputy marshal, and he used all the means in his power to evade an arrest. His brother, I. N. Ebbs, wrote to the deputy

marshal that if he would meet him at his house on the seventeenth day of July, an arrangement could be made for the surrender of the defendant and three other co-defendants. The deputy went to the place at the time designated, but a satisfactory arrangement was not made. The deputy, on his return, passed by a place where a number of men had met to have "a shooting-match." The defendant was there, and the deputy remained some time with him, but did not make an arrest, as he did not have the warrant in his possession. On several subsequent days the deputy made active efforts to arrest the defendant, but did not succeed until the day of the first arrest mentioned in considering the first exception.

The marshal is entitled to the expenses charged for the days his deputy endeavored to make an arrest previous to the seventeenth of July. I disallow the expenses for the subsequent days. When a warrant of arrest is put in the hands of an officer it is his duty, as soon as he conveniently can, to proceed with secrecy and diligence to apprehend the defendant. He must always be ready to perform the mandate of the warrant. In this instance I am disposed to hold the officer to the highest and strictest rule of duty, for when he subsequently made an arrest he voluntarily allowed the defendant to depart from custody on a promise to appear before the commissioner for trial on a future day. He had no right to show favor or trust to the promise of a criminal who had so long been evading the process of law. At the common law it was allowable for a constable, when he had made an arrest without a warrant in a case of a petty nature, to take the defendant's word for an appearance before a magistrate if he was of good repute and there was no probability of his absconding, (1 Chit. Crim. Law, 59;) but such indulgence was not allowable in this case.

As to the third exception, the evidence shows that the defendant had given bond to appear before the commissioner on the twentieth day of August, and we have above decided that such bond was valid. While under bond, and before the case was heard, there was no necessity for guarding him, as he was in the constructive custody of the court, and his sureties were his keepers. The defendant gave a new bond for his appearance on the twenty-seventh day of August, and the custody in which he was placed by the verbal order of the magistrate was unlawful.

The law fixes no time and place for the session of a commissioner's court, and the marshal and his deputies are not required to be present at such court, except where they have process to return and defend-

ants to bring in and guard. When a defendant is admitted to bail he is placed in the custody of his sureties, who have power to arrest him at any time they may desire; and they must have him before the court at the time and place designated in the bond, and they are not freed from this responsibility until the defendant is discharged, admitted again to bail, or placed in the custody of an officer of the law. If the magistrate hears the case and decides that the defendant shall give bail for his appearance in court to answer an indictment, and the defendant fails to give sufficient bail, he may be committed to prison, and if no regular officer can conveniently be found the *mittimus* may be directed to any person who shall have power to execute the same. Bat. Rev. Ch. 33, § 97; *Dean's Case,* 3 Jones, (N. C.) 393.

In such a case there is no legal requirement for the marshal or his deputy being present, but if either should be present and the defendant is committed to the custody of such officer, then the marshal would be entitled to charge for his own attendance and the service of a guard, if such service was rendered and was necessary, and the marshal must judge of such necessity. He would be responsible if the defendant should make an escape through his negligence in not summoning a guard. The law does not require or expect an officer, without assistance, to keep the custody of a prisoner charged with crime. If he relies upon his own vigilance, strength, and courage, and the prisoner escapes, he is not excused, no matter how earnestly and faithfully he endeavored to perform the duty imposed upon him. When the marshal or his deputy arrests a person under a warrant, the law requires him to carry the alleged offender before some examining magistrate as soon as the circumstances will permit. He may lodge the prisoner in the common jail, or resort to other modes of confinement, if any necessity or serious emergency should require such a course,—*he must keep the prisoner.* Nothing, however, but obvious necessity will authorize an officer to lodge a prisoner in jail before an examination and regular written commitment by a magistrate. This course may be adopted if the arrest is made in or near night, whereby he cannot attend the magistrate, or if there be danger of a rescue, or the party be too ill to appear before the magistrate, etc. 1 Chit. Crim. Law, 59; *State* v. *James,* 78 N. C. 455.

When a prisoner is brought before the magistrate he is still in the custody of the officer, who must keep him securely until he is disposed of in due course of law. As this high and strict responsibility is imposed by law upon the marshal he is authorized to summon the

necessary assistance, and he can keep such assistance as long as the responsibility continues, and he is entitled to the fees allowed by law for such important and responsible service. The rule of this court, which requires the commissioner to determine the question whether a guard is necessary for the marshal when a prisoner is before the court under arrest, must be set aside, as it is contrary to law. The marshal alone can determine this question, and say how far he is willing to subject himself to the chances and responsibilities of an escape. The marshal cannot be relieved by any action of the commissioner, as he has no power to commit a prisoner brought before him for examination until a cause of commitment judicially appears. When any commitment is ordered, a written *mittimus*, setting forth the cause, must be directed to the marshal or his deputy, commanding him to deliver the prisoner to the keeper of the common jail, and when the mandate of the warrant is obeyed then the marshal is relieved from the responsibility of custody. *Randolph* v. *Donaldson*, 9 Cranch, 78.

The marshal is clearly entitled to the fees charged for attending court and guarding the defendant on the twenty-seventh of August, as the defendant was put in his custody by order of the commissioner until sufficient bail was given for an appearance at court to answer an indictment. After hearing a case and determining to hold a defendant to bail, the commissioner can by verbal order put the defendant in custody of an officer until the bail required is given, but the officer cannot commit to jail without a written *mittimus* from the commissioner.

It is ordered that the clerk of this court retax the costs in this case in conformity with this opinion.